OLIVER D. SEYMOUR, TRUSTEE, *vs.* JOSEPH DAVIS AND OTHERS.

The owner of premises incumbered by a mechanics' lien mortgaged an undivided half of the equity of redemption to *D*, and afterwards the other half to a corporation. The prior encumbrancer obtained a decree of foreclosure limiting different times of redemption for *D* and the company. After the decree was passed, but six months before the expiration of the time limited, the company went into insolvency and *S* was appointed trustee of its estate under the insolvent law. There were many facts calculated to bring the foreclosure to the notice of *S* or to put him on enquiry, but as a matter of fact he had no knowledge of it until a few days after the time to redeem had expired. He then found that *D* had redeemed the whole property and taken a deed of it to himself, and he immediately offered to pay him all he had paid with interest, but *D* refused to accept it. The value of the property was much beyond the amount of all the encumbrances. On a bill to open the decree and redeem, brought by *S* against *D*, in which it was found by the court below that *S* had been guilty of negligence in the matter, it was held,

1. That the position of *D* and the company under their respective mortgages was one of equal equity, each holding an undivided half of the equity of redemption.

2. That neither therefore had an equitable right as against the other to redeem the half of the other out of his hands, but their rights of redemption were joint.

3. That since *D* had redeemed and taken the whole property, there was no inequity in requiring him to share the benefit of it with the company, by letting the latter take half the property on paying half that he had paid in redeeming, with interest—the half retained by *D* being more than sufficient for all the charges upon it.

4. That although *S* had been guilty of negligence, yet in the circumstances, and in view of the interest of the creditors whom he represented, and who were without fault, and regarding his negligence as rather inadvertence than positive negligence, the relief sought ought to be granted.

5. That it was questionable whether, without these qualifying incidents, the negligence of *S* in the matter of the foreclosure would be a reason for refusing relief against *D*, when it could be granted with no injury to *D*.

BILL IN EQUITY, brought by the petitioner as trustee in insolvency of the New England Fire Insurance Company, for the opening of a decree of foreclosure and for the right to redeem the mortgaged property ; brought to the Superior court in Hartford County, and heard before *Loomis, J.* The court found the following facts.

On the 5th day of December, 1864, Benjamin F. Ellis was the owner in fee simple of the whole of the premises described in the petition, which were situated in the town of Hartford, and on that day conveyed the premises to the Connecticut Mutual Life Insurance Company by deed of mortgage, to secure the payment of his note for the sum of $11,000 with interest. On the 4th of February, 1865, Ellis conveyed to the respondent Davis an undivided half of the premises. On the 16th of May, 1865, George S. Lincoln and Charles L. Lincoln, partners, filed, according to the law relating to mechanics' liens, their claim of lien on the premises for $445$\frac{49}{100}$, which claim commenced on the 28th day of September, 1864. On the 10th of January, 1866, George Burnham attached one undivided half of the premises as the property of Ellis for a debt of $400. On the 31st of May, 1866, Ellis, being indebted to the New England Fire Insurance Company by note of that date for the sum of $1,050, and being the owner of one undivided half of the premises, subject to the incumbrances above mentioned, conveyed his interest to the insurance company by mortgage deed, to secure the debt.

George S. Lincoln and Charles L. Lincoln, on the 23d of February, 1867, brought their petition to the March Term 1867 of the Superior Court in Hartford County to foreclose their lien, which petition was duly served upon Ellis, Davis, Burnham, and the New England Fire Insurance Company, as respondents. On the 24th day of April, 1867, and during the March term, the court passed a decree thereon foreclosing the New England Fire Insurance Company, and the other respondents thereto, of all right to redeem the premises unless they should pay the said George S. Lincoln and Charles L. Lincoln the sum of $500$\frac{89}{100}$ debt, with interest

from the 24th day of April, 1867, and $29$\tfrac{48}{100}$ costs, within certain periods limited in the decree, to wit, the said Ellis to be foreclosed unless he paid said sums and interest on or before the 24th day of December, 1867 ; the New England Fire Insurance Company on or before the 31st day of December, 1867 ; the said Burnham on or before the 7th day of January, 1868, and said Davis on or before the 14th day of January, 1868 ; all the respondents having appeared and been heard relative to the decree.

On the 5th of June, 1867, the petitioner, Seymour, was appointed by the probate court for the district of Hartford, trustee of the insolvent estate of the New England Fire Insurance Company, and he was duly qualified, and is now acting as such trustee.

On the 24th of June, 1867, Ellis made an assignment of all his property to Henry S. Pratt, and filed the same in the probate court for the district of Hartford under the insolvent law, and Joseph W. Dimock was appointed by the probate court trustee of his estate under the assignment, on the 13th day of July, 1868, and was then duly qualified, and ever since has been acting as such trustee, and the estate is still pending for settlement in the court of probate. All the unsecured creditors of Ellis agreed that Dimock might proceed to act as such trustee under the law, dispose of the estate, and distribute the avails to apply on their respective claims, but thus far all the assets have been insufficient to pay the necessary expenses of executing the trust.

The estate of the New England Fire Insurance Company is still pending for settlement before the probate court, and is insolvent.

There is still due upon the note of Ellis, described in the mortgage given by him to the company, the entire principal sum, with interest from the 1st day of November, 1866, and that note is in the hands of Seymour, the petitioner, as trustee of the estate of the company, as part of its assets.

In February, 1867, the Connecticut Mutual Life Insurance Company brought their petition to the March term of the Superior Court for the foreclosure of their mortgage, making

all the parties interested respondents thereto, on which peti-
tion a decree of foreclosure was passed limiting periods for
redemption which had not expired when the present petition
was brought.

Neither Ellis, Dimock, Burnham, the New England Fire
Insurance Company, nor Seymour, redeemed the premises
under the foreclosure of the Lincolns. On the 8th of Jan-
uary, 1868, Davis paid to the Lincolns the amount required
by the decree in their favor, and on that day they executed
and delivered to him a quit-claim deed of their interest in
the premises, and on the same day filed in the office of the
town clerk a certificate of the foreclosure of their lien.

The deed, dated February 4th, 1865, given by Ellis to Da-
vis, was given for the purpose of securing Davis as the accom-
modation indorser of certain notes given by Ellis as maker,
amounting in the whole to about the sum of $16,000, and
for no other consideration, and with an understanding be-
tween the parties that Ellis should be entitled to a reconvey-
ance of the premises so conveyed to Davis, on paying the
notes and saving Davis harmless therefrom.

Over five thousand dollars of these notes remain unpaid,
and Ellis as maker, and Davis as endorser, are still liable
therefor.

The value of the whole premises, exclusive of incumbrances,
is $20,000.

Neither the officers of the New England Fire Insurance
Company, nor any other person, ever communicated to Sey-
mour, trustee, the fact that the petition for the foreclosure of
their lien had been brought by the Lincolns, or that the
decree in their favor had been passed, until after the 8th
day of January, 1868, nor did he have any knowledge that
such facts existed until after that date. On or about the 13th
of January, 1868, he saw the records of the certificate and
deed made and filed by the Lincolns on the 8th of January,
and thereby first had actual knowledge of the petition and
decree in their favor. He thereupon, and immediately there-
after, offered to pay Davis the amount paid by him to the
Lincolns, and all his expenses in obtaining and recording the

deed and certificate, with interest thereon, and requested him to release to the company the interest he had acquired thereby, but he refused to accept the money or to give the release. He thereupon brought the present petition, on the 18th day of January, 1868.

After the appointment of Dimock, as trustee of the estate of Ellis, he from time to time, until the expiration of the time for redemption limited in the decree, offered to sell the property for the purpose of realizing (if possible) a balance in favor of the estate of Ellis above the amount of the incumbrances upon the property, and advertised the property to be sold at private sale, and afterwards at public auction, but could find no purchaser who would give as much as the amount of the incumbrances, and so all his efforts to sell were unavailing. Seymour had a general knowledge of the efforts which Dimock was making to sell the property, but never inquired or informed himself particularly as to the result of those efforts or the probability of effecting a sale.

Seymour and Davis, between the 13th of July, 1867, and the 31st of December, 1867, had several casual conversations concerning the property in question, during which conversations Davis asked Seymour's opinion as to the value of the property, and whether or not he (Davis) had better purchase it. From these inquiries, and the repetition of them from time to time, Seymour inferred and believed that Davis intended to purchase the property at a sum sufficient to pay all the incumbrances thereon, but Davis never told Seymour that he should or should not purchase. Neither did Davis ever inform Seymour of the pendency of the petition for foreclosure, or of the decree, but he did not knowingly or intentionally withhold or conceal anything from Seymour, or in any way intentionally mislead him, and the court found that Davis was not guilty of any actual fraud in the matter, and that the facts found did not constitute constructive fraud.

The court further found that the petitioner was well informed generally as to all matters of business, and particularly as to all matters pertaining to lands in the city of Hartford; that his office, during all the time in question, was

near the place of business of all the parties interested in the property, and that he had near and easy access to all the sources of information concerning the property, and all proceedings had in reference thereto ; that he acted as appraiser on the assigned estate of Ellis, and was, in fact, well acquainted with the situation and value of the property in question, and the incumbrances thereon ; that the note and mortgage from Ellis to the New England Fire Insurance Company came into his hands as trustee, immediately after his appointment, and that he was then fully advised that the note and interest thereon were over-due, and that Ellis had been very negligent with regard to the same, and with regard to all his debts ; but from the time of his appointment until the 14th day of January, 1868, Seymour took no steps whatever to collect the note or to dispose of or foreclose the mortgage, or in any way to recover the amount due thereon. From the foregoing facts the court found that Seymour did not use due diligence, as trustee, relative to the matter in question, and that he was not entitled to have the decree opened in his favor, and ordered the bill dismissed.

The petitioner brought the record before this court by a motion in error.

*Barbour*, for the petitioner.

*Goodman* and *Robinson*, for the respondents.

CARPENTER, J. We think under all the circumstances that the decree of the Superior Court should have been opened and the petitioner permitted to redeem. It seems that Ellis, being the owner of the whole property, mortgaged it to the Connecticut Mutual Life Insurance Company. He then sold one undivided half of his interest to the respondent Davis. Subsequently George S. and Charles L. Lincoln acquired a lien upon the whole property under the statute relating to mechanics' liens. Ellis's interest was then attached by Burnham. Subject to all these incumbrances Ellis mortgaged his half of the property to the New England Fire In-

surance Company. In this condition of affairs the Lincolns brought a petition to foreclose their lien. A decree was passed foreclosing Ellis, Dec. 24th, 1867, the New England Fire Insurance Company Dec. 31, 1867, and Burnham on the 7th day of January, 1868. In default of payment by all these, Davis, by the terms of the decree, was permitted to redeem not only his own moiety but also the other, in which he had no interest. As all the others failed to redeem, Davis redeemed the whole, and took from the Lincolns a quit-claim deed conveying the entire property, after they had filed a certificate that their title had become absolute as against Ellis, the Fire Insurance Company, and Burnham. It now appears that the whole property was worth much more than the incumbrances upon it; so that the effect of the decree was, not only to permit Davis to protect his own interest, but also to purchase the other moiety, after all subsequent incumbrances had been foreclosed, by paying the sum named in the decree, which was much less than the value of the property.

The object of a foreclosure proceeding is to compel the payment of the debt, by foreclosing the interest of the mortgagor or other owner of the equity of redemption if it is not paid; but we are not aware of any equitable principle that will allow a stranger to redeem, and appropriate the equity of redemption, which may be of considerable value, as in this case, wholly to himself.

That portion of the property owned by Ellis seems to have been worth enough, over and above all prior incumbrances, to pay the present petitioner's debt, which was over $1,000. The result of the proceeding is, that Davis protects his own interest, is reimbursed all that he expends, and makes a handsome profit besides; while the creditors of the New England Fire Insurance Company, without any fault on their part, (whatever may be said of the trustee,) meet with a corresponding loss. A court of equity will not knowingly aid in accomplishing such a result. The effect therefore of this decree, to that extent, seems to be inequitable.

It may be said however that Davis was not a stranger;

that as he was the owner of one-half the equity of redemption, he had to redeem in order to protect himself. That is true ; but does it necessarily follow that by redeeming he is entitled to the whole property to the exclusion of his co tenant ? Suppose there had been no incumbrances subsequent to the Lincolns' lien. Then, as Davis and Ellis would have been equally interested, I suppose the decree regularly would have run against them jointly ; and both would have been foreclosed, if at all, at the same time. There could have been no foreclosure against one and not against the other ; much less could there have been a foreclosure of one for the benefit of the other. A redemption by one within the time limited would have enured to the benefit of the other so far as to save a forfeiture. The latter could be compelled to pay his proportion of the mortgage debt ; and I think he would be permitted to do so and save his estate, even after the expiration of the time limited, especially if the equities of the case required it. Why does not the same principle apply to this case ? If Davis and Ellis were equally obligated to pay this claim as between themselves, then Ellis, or those entitled to his rights, ought to refund to Davis one-half the amount he was compelled to pay. If it was Ellis's debt alone, then the whole amount should be reimbursed. In that way the rights of all concerned can be protected. We do not see that the Lincolns would suffer from such a course. . They get their debt in full ; and that is all they desire or are entitled to. Davis cannot complain, as he pays no more than he ought to pay, and his interest in the property is fully protected.

Now, without intending to establish any law applicable to any case but this and those similarly situated, we think this view of the case shows a strong equity in favor of the petitioner. Anything inequitable in the decree itself, or its results, may have an important bearing upon the question of opening the decree and extending the time for redemption. *Bridgeport Savings Bank* v. *Eldredge*, 28 Conn., 556.

But it is said there was negligence on the part of the trustee. Admit that ; and yet we should not feel disposed to

punish him, much less the creditors, when it appears that nobody was injured by it. But even if the trustee was the only party to be affected by it, we are by no means certain that there was that degree of negligence which ought to deprive him of relief. The case had gone into judgment when the estate came into his hands. His interest in the property arose from certain legal proceedings before the court of probate. He had not the same motive to examine its condition critically that a purchaser, or single creditor about to secure his debt by attachment, would have. While we would not excuse a trustee from using reasonable diligence, yet some allowance must be made in a case like this for an expectation on his part, that among so many persons interested in the estate, some of them at least would give him some information in respect to so important a transaction as a pending decree foreclosing a mortgage. That information he did not obtain ; and the case further finds that he was entirely ignorant of it until after the 8th of January. Doubtless those interested, and who would be most likely to impart such information, supposed that he knew it. And thus through inadvertence and mistake, rather than negligence, he failed to learn the facts.

Besides, he had frequent conversations with Davis in respect to the purchase of the property by the latter, from which he inferred and believed that Davis intended to purchase the property at a sum sufficient to pay all incumbrances thereon. Now the court has negated all fraud, actual or constructive, in Davis. Nevertheleless all the facts in the case tend strongly to show a mistake. The trustee had no knowledge in fact of this judgment ; and the course pursued by Davis, (unintentionally as it appears,) had the effect to throw him off his guard. That he would have redeemed, had he known the facts, is manifest from the fact that, as soon as he learned them, he immediately offered to pay to Davis the amount paid by him to the Lincolns, and all his expenses and interest.

On the whole substantial justice requires that the peti-

tioner should be permitted to redeem. The decree of the Superior Court must therefore be reversed.

In this opinion the other judges concurred.